# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 16-cv-2466-WJM

JERRY ANTHONY SAIZ,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,[1]

    Defendant.

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Jerry A. Saiz ("Saiz") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits and supplemental security income. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Saiz was not disabled within the meaning of the Social Security Act. This appeal followed.

For the reasons set forth below, the ALJ's decision denying Saiz's application for disability insurance benefits and supplemental security income is VACATED and the case is REMANDED for further proceedings consistent with this Order.

## I. BACKGROUND

Saiz was born in 1963, and was 50 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 11) at 45.) Saiz completed the eleventh grade and has

---

[1] Nancy Berryhill is automatically substituted for Carolyn Colvin under Federal Rule of Civil Procedure 25(d).

previously worked as a laborer and tractor operator. (R. at 135.)

Saiz filed an application for a period of disability and disability insurance benefits on April 29, 2013, alleging that he has been disabled since March 4, 2013 due to multiple impairments, including: broken ribs, carpel tunnel, back problems, Bell's palsy, nerve damage, and hernia related injuries. (R. at 45.) Saiz also filed an application for supplemental security income on April 29, 2013, alleging the same disabilities. (R. at 51.) Saiz's applications were initially denied and he requested a hearing, which was held on April 16, 2015 before ALJ Earl W. Shaffer. (R. at 27, 49, 55.) On May 5, 2015, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process. (R. at 10–22.)[2]

At step one, the ALJ found that Saiz had not engaged in substantial gainful activity since March 4, 2013. (R. at 12.)

At step two, the ALJ found that Saiz suffered from the following impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, carpal tunnel syndrome, and obesity. (*Id*.) The ALJ found each of the above impairments to be medically determinable and severe. (R. at 12–13.)

At step three, the ALJ found that Saiz's impairments, while severe, did not meet or medically equal any of the impairments listed in the Social Security regulations. (R.

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

at 14.)

Before proceeding to step four, the ALJ assessed Saiz's residual functional capacity ("RFC"). The ALJ concluded that Saiz has the RFC to perform "light" work as defined by the regulations, except as follows:

> Standing, walking, and sitting are all six out of an eight-hour workday. Pushing and pulling with the upper extremities are limited to 15 pounds. There should be no climbing of ladders, ropes, and scaffolds and no balancing or crawling. Overhead reaching bilaterally is limited to 10 pounds occasionally. The claimant must avoid concentrated exposure to extreme cold, vibrations, unprotected heights, and unprotected major industrial machinery. Work could be performed at the unskilled level.

(R. at 14.)

Next, at step four, the ALJ concluded that Saiz "is unable to perform any past relevant work." (R. at 20.) Thus, the ALJ proceeded to step five and found that there are jobs that exist in the national economy that Saiz could perform, such as: cashier, garment sorter, and mail clerk. (R. at 21.)

Accordingly, the ALJ found that Saiz was not entitled to either disability insurance benefits or supplemental security income. (R. at 22.) The ALJ's decision became final after sixty days. *See* 20 C.F.R. § 404.984(d). Saiz appealed to the Social Security Appeals Council, which denied review (R. at 1). Saiz then filed this action seeking review of the ALJ's May 5, 2015 decision. (ECF No. 1.)

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. ANALYSIS

On appeal, Saiz makes three arguments as to why the ALJ's decision should be reversed: (1) "[t]he ALJ did not explain why he did not follow Dr. Simpson's postural restrictions"; (2) "[t]he ALJ did not have valid reasons for rejecting Dr. Dilullo's requirement for breaks"; and (3) "[t]he ALJ did not have valid reasons for rejecting Dr. Campbell's restrictions." (ECF No. 14 at 4.) As the Court finds the second argument dispositive, it will address this argument first.

Saiz contends that the ALJ erred in failing to provide "valid reasons for rejecting Dr. Dilullo's requirement for breaks after standing or walking for more than ten to twenty minutes." (*Id*.) Specifically, Saiz argues that the "ALJ improperly substituted his opinion for that of the physician," and further asserts that the ALJ's reasons for rejecting Dr. Dillullo's restrictions are "not supported by any evidence in the record." (*Id.* at 11, 13.)

4

On May 5, 2012, Saiz was examined by consultative examiner Dr. Dilullo, M.D. (R. at 548.) Dr. Dilullo's treatment notes reflect that he diagnosed Saiz with "[n]europathy of the lateral aspect of the left foot, chronic." (R. at 553.) Dr. Dilullo also provided a functional assessment in which he opined that Saiz's "medical issues do appear to be chronic in nature." (R. at 553.) Following this he suggested that Saiz "have breaks from standing or walking for more than 10–20 minutes at a time due to the numbness in his lateral left foot as well as his back pain. He may be at risk for easy fatigability." (*Id.*)

The ALJ gave Dr. Dilullo's opinion "some moderate weight." (R. at 18.) In weighing Dr. Dilullo's opinion, the ALJ noted that "[t]he need for breaks from standing and walking is not wholly consistent with the December 2014 neurosurgical evaluation, which ruled out nerve root impingement and the need for lumbar spine surgery." (*Id.*) Thus, the ALJ did not include these break requirements as part of Saiz's RFC.

The progress notes from the neurosurgical exam addressed by the ALJ do in fact state that Saiz "does not have any symptoms of S1 nerve root impingement" and that "surgery is not indicated." (R. at 356–57.) However, Saiz asserts that "[t]he important thing is that Dr. Dilullo explained that the need to rest after standing or walking is due to the numbness in his left foot as well as his back pain. Dr. Dilullo did not say the need for rest is related to S1 nerve root impingement. [Nor] did Dr. Dilullo say the need to rest is related to the need for lumbar surgery." (ECF No. 14 at 13.) Saiz thus implies that the ALJ made his own lay interpretation of what lack of nerve root impingement and lack of need for lumbar surgery means in terms of standing and walking capacity.

5

The Court agrees with Saiz. In the Court's view, the ALJ clearly indicated in his decision that he was discounting Dr. Dilullo's break requirements because it was "not wholly consistent" with the neurosurgical evaluation. (*See* R. at 18.) An ALJ may choose to reject a physician's medical opinion. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). However, he or she may do so "only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *Id*. (emphasis in original).

In rejecting Dr. Dilullo's break restrictions, the ALJ did not cite contradictory medical evidence. (*See* R. at 18 (citing R. at 357).) In fact, nowhere in the neurosurgical evaluation is there an opinion that Saiz does *not* have a need for breaks after periods of standing and walking specifically because of his lateral left foot numbness or back pain. (*See* R. at 356–57.) Nor does either medical opinion directly link the need for breaks with nerve root impingement or the need for lumbar surgery. This leads the Court to the conclusion that the ALJ impermissibly interjected his own lay opinion on this issue, and then relied on his own personal, non-medical opinion when linking the need for breaks with the lack of nerve root impingement and lumbar surgery. *See McGoffin*, 288 F.3d at 1252.

Accordingly, the Court finds that the ALJ rejected the break restrictions suggested by Dr. Dilullo through the use of lay opinion and speculation, and that this clear error requires a remand for rehearing.

The Court expresses no opinion as to the remainder of Saiz's arguments, and neither party should take the Court's silence as tacit approval or disapproval of how the

6

evidence was considered. Further, the Court does not intend by this opinion to suggest the results that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.

Dated this 22nd day of September, 2017.

BY THE COURT:

William J. Martínez
United States District Judge